CHAPMAN et al. v. EVANS.

No. 14669.

Court of Civil Appeals of Texas. Fort Worth.

March 16, 1945.

Rehearing Denied April 20, 1945.

H. W. Allen, of Hamilton, and Todd, Crowley & Gambill, of Fort Worth, for appellants.

Lem Billingsley, of Fort Worth, and C. O. McMillan, of Stephenville, for appellee.

SPEER, Justice.

This suit was instituted by J. A. Jeffrey as next friend for his minor daughter, Louise Jeffrey, and in his own behalf to recover ambulance, hospital and doctor's bills incurred by him for and in behalf of his said daughter, against Arch Evans, hereinafter referred to as defendant. We shall designate the plaintiffs, when necessary, as J. A. Jeffrey and Louise Jeffrey.

The action grew out of the striking of Louise Jeffrey by the automobile of defendant while being driven by him on West Seventh Street in the City of Fort Worth.

The street on which the accident happened is 76 feet wide, paved, and leads west out of the city and has three lanes for vehicular traffic on either side of the central dividing line. Carroll Street intersects West Seventh Street and has a dead end at the south side of West Seventh. A marked walk or pedestrian way crosses West Seventh and there are oval discs dividing West Seventh Street at its center, but no discs are in the marked pedestrian passageway on Carroll Street.

During the early evening hours, after dark, Louise Jeffrey met some friends by appointment on the north side of West Seventh and its intersection with Carroll Street to attend a carnival on the south side of West Seventh. They started across West Seventh at the intersection following the marked pedestrian walk-way; Louise Jeffrey looked in both directions, east and west, before starting across the street; she saw the lights of a car coming from the east, but it was some distance away, moving slowly next to the curb on the north side of West Seventh Street. This was not the car that struck her, since it arrived at the scene immediately after the accident occurred. She said she looked east on West Seventh as she walked across the street until she stopped; that she stopped "close to the buttons" but did not know how far away she was when struck. She saw a car coming from the west and stopped to await its passage. None of the party looked east again and while standing there, defendant's car, traveling west in the traffic lane next to the center line of West Seventh Street, struck Louise Jeffrey, she being on the east side of the group of ladies; all were knocked down and Louise was seriously injured. The streets were dry, well lighted and a "blinker" warning light was over the intersection. Defendant was driving in the traffic lane next to the center of West Seventh Street because he expected to turn left at the next street intersection one block beyond where the accident happened. He saw the ladies in the street and immediately applied his brakes. His car tires marked the pavement parallel with the center marker for a distance of 41 feet

before Louise was struck. The closest mark on the pavement was approximately three feet from the center line. The pedestrians were directly in front of the automobile when struck; there was a dent on the radiator near its center.. If the dent in the radiator was caused by the collision, Louise Jeffrey was approximately five feet from the center of West Seventh Street and perhaps near the center of the traffic lane in which defendant was driving.

The case was tried to a jury on special issues, the answers of the jury will reflect the issues of fact presented by the pleadings and evidence. The fact findings in the verdict were susbtantially as follows: (5) Immediately prior to the collision the defendant did not fail to keep a proper lookout; (8) At the time of the collision defendant was not operating his car at a greater rate of speed than thirty miles per hour. (10) Defendant was not operating his car at a greater rate of speed than a person of ordinary prudence would have done under the same or similar circumstance. (12) It was not negligence for defendant to fail to turn his car to the right after he discovered the plaintiff (Louise Jeffrey). (14) Defendant did not fail to sound his horn immediately prior to the time he reached the place of the collision. (17) Louise Jeffrey was guilty of negligence, (a) proximately causing the collision, by standing at the place where she was in the street, at the time of the collision. (19) Louise Jeffrey was negligent, (a) which proximately caused the collision, in the manner in which she was walking across the street at the time. (21) Immediately before the collision, Louise Jeffrey failed to keep a proper lookout, and (a) such failure was a proximate cause of the collision. (23) Louise Jeffrey failed immediately before the collision to walk to the space between the discs in the center of the street before stopping; (a) such failure was negligence and (b) a proximate couse of the collision. (26) Louise Jeffrey, immediately prior to the collision, did not stop suddenly immediately in front of the defendant's moving automobile. Issues were submitted inquiring about the amount of damages sustained by each of the plaintiffs, Louise Jeffrey and her father, J. A. Jeffrey. Each of these issues were accompanied by proper explanations relating thereto, but neither inquiry was answered by the jury.

830

Judgment was entered for the defendant on the verdict and plaintiffs have appealed.

First four points assert error in that there was no evidence to support the jury findings of contributory negligence on the part of Louise Jeffrey; that the evidence was insufficient to show contributory negligence; no evidence that such contributory negligence was a proximate cause and because the verdict finding contributory negligence is against the overwhelming preponderance of the evidence.

It would serve no useful purpose to set out the evidence on these issues, but it appears that defendant's car tires marked the pavement 41 feet and these marks were parallel with the center line of the street; defendant said the ladies were directly in front of his car, the radiator hood was dented near the center, and Louise Jeffrey also said she was "in the middle of the car." It cannot be said that such matters are without probative value, and these facts obviously placed Louise Jeffrey from three to five feet north of the discs, and she said she was standing still where she was struck and looking in the opposite direction from whence came the car that struck her. True there were other circumstances which could be construed as conflicting with what we have pointed out, but the testimony must be construed in its most favorable light in support of the jury finding, even to the discarding of all evidence to the contrary. 17 Tex.Jur. 910 sec. 410; later than the above text is Texas & N. O. R. Co. v. Brannen et al., 140 Tex. 52, 166 S.W.2d 112. When, as in this case, the substantial evidence is conflicting and the jury decides in favor of one contention we may not disregard such finding and adhere to the opposite view. Long-Bell Lumber Co. v. Bynum, 138 Tex. 267, 158 S.W.2d 290; Choate v. San Antonio & A. P. R. Co., 91 Tex. 406, 44 S.W. 69; Sproles Motor Freight Lines v. Juge, Tex.Civ. App., 123 S.W.2d 919, writ dismissed. Plaintiffs (appellants) have cited many cases to the effect that when the verdict is contrary to the overwhelming preponderance of the evidence, and is clearly wrong, and that justice demands another trial, or is so unreasonable as to shock the conscience of the court, a reversal is required. In view of the testimony before us, we are unwilling to bring this case under that rule. The points must be overruled.

Points five and six assert error in the jury findings that defendant was not guilty of negligence proximately causing the collision. Again we find the evidence conflicting to the extent that some witnesses said they did not see the lights of defendant's car burning while defendant and two witnesses in the car with him said they were burning and the officer who inspected the accident said they were burning when he arrived; and defendant testified to having looked for traffic and pedestrians on and approaching the intersection, and the jury having acquitted defendant of negligent acts charged, we must apply the rule of law announced above in such cases and overrule the points.

Seventh point complains because defendant's attorney injected into the case insurance carried by Louise Jeffrey. While the father, J. A. Jeffrey, was testifying he was asked by defendant's counsel this question:

"Q. Your daughter (Louise Jeffrey) worked at the Consolidated Aircraft Company at the time this occurred, didn't she? Answer: Yes, Sir.

"Q. And she, like all the Consolidated Aircraft Company employees, had a policy of health and accident insurance?"

Plaintiff's counsel objected, and the court sustained the objection.

Defendant's counsel then said:

"Your Honor, he (J. A. Jeffrey) has brought this suit, alleging he had to pay the doctors and hospital."

His co-counsel added, "I thought we might be permitted to show that the insurance company paid it."

On motion the court excluded the inquiry and all remarks about insurance and instructed the jury not to consider either.

In most of the cases coming to our attention, the matter of insurance has arisen by plaintiff's counsel dropping suggestions by questions asked, that defendant is protected by liability or indemnity insurance, and thereby get the idea over to the jury that defendant will not have to pay such judgment as may be rendered, but that an insurance company will pay. Whether a litigant believes a jury will more readily find against an insurance company than an individual is immaterial.

The fact remains that even though a party is insured against injury, does not affect his right to recover, if he is otherwise entitled to do so. One's contract of insurance does not inure to the benefit of another who is liable for damages to the insured, nor may such insurance be considered in mitigation in an action for damages. 13 Tex.Jur. 173 sec. 81; Green v. Texas & P. R. Co., 125 Tex. 168, 81 S.W. 2d 669, 673; Graves v. Poe, Tex.Civ.App., 118 S.W.2d 969; error dismissed; 25 C.J. S., Damages, p. 647, § 99. It is the general rule in this state that when insurance carried by a defendant is injected into the case, it presents reversible error. Jimmie Guest Motor Co. v. Olcott, Tex.Civ.App., 26 S.W.2d 373, error dismissed; Levinski v. Cooper, Tex.Civ.App., 142 S.W. 959; D. & H. Truck Line v. Lavallee, Tex.Civ. App., 7 S.W.2d 661, error refused; Page v. Thomas, 123 Tex. 368, 71 S.W.2d 234; Continental Oil Co. v. Barnes, Tex.Civ. App., 97 S.W.2d 494, writ refused. On this point in Kuntz v. Spence, 67 S.W.2d 254, 256, the Commission of Appeals, with the approval of the Supreme Court, said: "In this respect we judicially know that juries are much more apt to return a verdict for the injured party, and for a larger amount, if they know the loss is to ultimately fall on an insurance company."

As pointed out above, defendant's counsel raised the question of plaintiff, J. A. Jeffrey, being protected by insurance. Evidently he thought that such fact would relieve him of liability or in some other way help him in the eyes of the jury; it should do neither. There is nothing in the record to indicate the provisions of any health and accident insurance policy that Louise Jeffrey may have carried, and even though it had provided that such insurance company would pay doctor and hospital bills, defendant was a stranger to such contracts and they would not inure to his benefit. If it be conceded that Louise had purchased such policies, she was a minor, and absent evidence of emancipation by the father, the premiums were paid out of the father's funds. We will not assume that the jury, under the facts before us, could draw the line of distinction between what they might perceive to be the nature of such insurance and those of liability and indemnity insurance which so many times have been held to be prejudicial error when injected into the case.

The manner in which defendant's counsel asked the question, and his subsequent remark, without evidence to support either, informed the jury that all employees of the Aircraft Company carried health and accident insurance, and that such insurance provided that the insurance company paid doctor and hospital bills, which may or may not have been facts. Ordinarily when a plaintiff leads a jury to believe the one being sued is protected by insurance a court may summarily declare a mistrial; this, in many instances, would be beneficial to a defendant, but it does not follow that when a defendant intentionally or inadvertently apprises the jury of such things that a plaintiff must move for a mistrial and thereby benefit the defendant. Finck Cigar Co. v. Campbell, Tex.Civ. App., 114 S.W.2d 348, affirmed 134 Tex. 250, 133 S.W.2d 759. The court sustained the motion to withdraw all that was said about the insurance policy but the harmful effect must have necessarily remained in the minds of the jurors. In fact, subsequent points of error complain of discussions of insurance by the jury while deliberating on the verdict. This matter is raised in the eighth point of error as jury misconduct, which it is to be hoped will not occur again. We conclude that reversible error was committed by the acts of defendant's counsel, and that the court's ruling thereon could not cure it.

Eighth, ninth and tenth points pertain to jury misconduct and without expressing any opinion upon the merits thereof, it is unlikely that the same things will happen upon another trial.

Eleventh point asserts error because the court refused to give plaintiffs' first requested issue inquiring if defendant's failure to drive his car behind Louise Jeffrey was a proximate cause of the injury. The court submitted an issue inquiring if it was negligence for defendant to fail to turn his car to the right after he discovered Louise Jeffrey. From the physical facts if he had turned his car to the right, he would have passed behind the injured party. The matter was effectively presented by the court. Plaintiffs' claim of right to submission of the issue requested was based on the provisions of a City Ordinance; but a careful reading of the ordinance shows that the requirement of passage behind the pedestrian is limited to instances in which the pedes-

trian has reached the "middle of the roadway." Certainly Louise Jeffrey had not done this. We overrule this point.

Twelfth and thirteenth points complain because of the court's submitted special issue which inquired about the speed of the defendant's car "at the time of the collision," instead of giving plaintiffs' requested issue inquiring of the rate of speed at the time the defendant applied his brakes. The point is well taken, the uncontradicted evidence shows that at the time defendant's car struck Louise Jeffrey his tires had "skidded" and marked the pavement for forty-one feet, and it stands to reason that the rate of speed he was traveling before he applied his brakes would affect the distance his car would go after effectively applying his brakes. It also appears that the tire marks on the pavement extended ten feet beyond .where it actually contacted the plaintiff. Obviously when Louise was struck the automobile had been materially slowed down, and its rate of speed "at the time it struck her," would not necessarily be the test of defendant's negligence.

There is no error presented by the fourteenth point complaining of the special issue which inquired if Louise Jeffrey was guilty of negligence in the manner in which she attempted to cross the street. Such general inquiries may be superfluous in cases of this character when the specific acts of asserted negligence appear. The authorities cited apply to entirely different conditions than those before us.

No error is presented by the sixteenth point which complains because the court excluded the testimony of Mrs. Harvey relative to the speed of defendant's car. She said she was just beginning to learn to drive and had had no experience in observing cars as to their speed; she was asked: "I will ask you to just state whether the car was going fast or not. A. Yes, Sir." Upon objection the court excluded her answer. In the first place the answer was meaningless, in view of the question asked; and, in the next place, absent any type of qualification to determine such matters, the court did not abuse his discretion in excluding it.

Fifteenth point complains because the court refused plaintiffs' motion for mistrial because all issues were not answered. Those not answered inquired of the amount of damages sustained by each

of the plaintiffs. No error is presented here because they became immaterial in view of the answers of the jury on contributory negligence.

For the errors pointed out the judgment of the trial court is reversed and the cause remanded for another trial.